**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION**

SOLBOURNE COMPUTER, INC,

       Plaintiff,

      v.                                      Case No.: 3:07-cv-494/RV/EMT

BOARD OF COUNTY COMMISSIONERS
OF ESCAMBIA COUNTY, FLORIDA,

       Defendant,

ERNIE LEE MAGAHA, as Clerk of the
Circuit Court and Comptroller of
Escambia County, Florida,

       Proposed Intervenor.

_____/

## ORDER

      Ernie Lee Magaha, as Clerk of the Circuit Court and Comptroller of Escambia County ("the Clerk"), moves to intervene in this case pursuant to Rule 24(a) of the Federal Rules of Civil Procedure (doc. 10). The plaintiff and the defendant oppose the motion.

### I. BACKGROUND AND APPLICABLE LAW

      The facts of this case need not be set forth in detail. In short, the plaintiff Solbourne Computer entered into a contract with Escambia County to provide consulting and other services to assist in upgrading and modernizing the County's computer systems. The contract was terminated (for reasons not pertinent here), after which the defendant Board of County Commissioners of Escambia County ("the Board") approved of a "Termination of Contract" settlement agreement with the plaintiff. However, it is the Clerk, as the County's Auditor and Custodian of County funds, who actually issues checks on behalf of the Board, and he disagreed with the legal propriety of a portion of the settlement. The plaintiff filed a breach of

contract action against the Board in this court, which was amended on January 15, 2008.  Very shortly thereafter, on January 24, 2008, it filed an *unopposed* motion for judgment on the pleadings. I granted that unopposed motion on January 30, 2008, and entered final judgment accordingly.  The case has been closed. The Clerk, as noted above, filed a motion to intervene on February 6, 2008, pursuant to Rule 24(a) of the Federal Rules of Civil Procedure.

Rule 24(a) of the Federal Rules of Civil Procedure states:

> (a) Intervention of Right. **On timely motion**, the court must permit anyone to intervene who:
>
> (1) is given an unconditional right to intervene by a federal statute; or
>
> (2) claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest.

As the emphasized language indicates, the motion to intervene must be timely. This is a threshold question, and the proposed intervenor has the burden of establishing timeliness. *See, e.g., Chiles v. Thornburgh,* 865 F.2d 1197, 1213 (11th Cir. 1989). The Eleventh Circuit Court of Appeals has explained that "timeliness is not a word of exactitude or of precisely measurable dimensions. The requirement of timeliness must have accommodating flexibility toward both the court and the litigants if it is to be successfully employed to regulate intervention in the interest of justice." *Id.* (citation and quotation omitted). In determining if the motion to intervene is timely, I must consider (1) the length of time during which the proposed intervenor knew, *or reasonably should have known*, of his interest in the litigation before moving to intervene; (2) the extent of any prejudice to the existing parties as a result of the intervenor's failure to move to intervene as soon as he knew or reasonably should

have known of his interest; (3) the extent of any prejudice to the intervenor if his motion is denied; and (4) the existence of unusual circumstances militating either for or against a determination that the motion was timely. *Id.*

A party seeking to intervene in a case post-judgment faces a more difficult task to demonstrate timeliness. *See United States v. U.S. Steel Corp.*, 548 F.2d 1232, 1235 (5th Cir. 1977) (district court did not err in denying intervention as untimely after final judgment was entered; explaining that intervention attempts after judgment are "looked upon with a jaundiced eye [as they] have a strong tendency to prejudice existing parties to the litigation or to interfere substantially with the orderly process of the court"); *McDonald v. E.J. Lavino Co.*, 430 F.2d 1065, 1071-72 (5th Cir. 1970) (alluding to the "well established general principle that intervention after judgment is unusual and not often granted"); *see also Brown v. Advantage Engineering, Inc.*, 960 F.2d 1013, 1016 (11th Cir. 1992) (collecting multiple cases for the view that "intervention after settlement or entry of judgment is not favored") (Edmonson, J., dissenting); *accord Dimond v. District of Columbia*, 792 F.2d 179, 193 (D.C. Cir. 1986) (recognizing that motions to intervene filed after judgment "will usually be denied where  a clear opportunity for pre-judgment intervention was not taken").

## II. DISCUSSION

With the foregoing in mind, and after carefully considering the evidence and arguments of counsel presented during the hearing and in their respective pleadings, I must deny the motion to intervene as untimely. First, there is no doubt that the Clerk has standing to seek to intervene in this matter.  Next, as to the length of time that the Clerk knew or reasonably should have known of his interest in this case, the pertinent date regarding this issue is December 6, 2007. That is the date that two individual representatives from the Clerk's Office (Patricia Sheldon, as the Clerk's representative, and Doris Harris, as the Clerk's person responsible for taking the minutes of the meeting) attended a regular meeting of the

Board during which the Solbourne suit was identified and discussed. Indeed, an e-mail from Sheldon to Lisa Bernau (the Chief Deputy Clerk, who is also an attorney), dated the morning of December 6th, specifically referenced scheduling a "shade meeting" between the County Commissioners and the County's attorneys to discuss "the pending Solbourne payment due from the County."  The "shade meeting" was scheduled for January 10, 2008, and the Clerk's Office published the official notice of that meeting in the newspaper.  Harris apparently also took the minutes of the January 10th meeting.  Thus, although there is no evidence that Sheldon, Harris or Bernau investigated the issue further, or specifically informed the Clerk of the issue as it was known to them, there certainly was constructive knowledge of a proposed legal resolution of the County's legal dispute with Solbourne, and that constructive knowledge must be imputed to the Clerk. Yet, the motion to intervene was not filed until one week *after* judgment was entered.[1]

I have also considered the separate issues of prejudice (to the Clerk, to the parties, and to the public) as well as the unusual circumstances of the case. Importantly, the totality of the circumstances must also be considered in determining whether the intervention application was timely, and the mere first knowledge of the pendency of this action may not be determinative*.  See, Stallworth v. Monsanto co.,* 558 F.2d 257, 265 (5th Cir. 1977).  Here, the Solbourne payment dispute had been going on for months and most of the deputy clerks and staff, including Sheldon, were well aware of it.  The scheduled attorney-client meeting was properly noticed, with the knowledge and assistance of the Clerk's staff.  The minutes of the attorney-client meeting were apparently prepared by the Clerk's representative.  All of this should have made the Clerk's staff aware

---

[1] I emphasize that there is no evidence or suggestion that the Clerk was personally aware of this federal suit until after final judgment was entered. But, "actual knowledge is not required." *Stallworth v. Monsanto Co.*, 558 F.2d 257, 264 (5th Cir. 1977).

of the legal resolution going forward.  The dates of the federal court filing of the complaint, the amended complaint, and the unopposed motion for judgment on the pleadings, while significant, were not the only means of learning about the concluding resolution of this months-long dispute.  Although one could surmise that there was something suspicious about the pre-packaged consent judgment and the hurried manner in which it was pursued in this court --- and perhaps question whether it was done to avoid the Clerk's challenge --- the inescapable conclusion is that the motion was untimely.[2]

## III. CONCLUSION

For the reasons stated above, the Clerk's motion to intervene (doc. 10) must be, and is, DENIED

DONE and ORDERED this 11th day of April, 2008.

/s/  *Roger Vinson*
**ROGER VINSON**
**Senior United States District Judge**

---

[2] I note that the consent judgment was apparently the result and implementation of a negotiated settlement. Such settlements are, of course, favored under the law because they help avoid the costs of litigation and, *inter alia,* help serve the interests of judicial economy. The general idea of settlement is that each side gives and takes, and that appears to be what happened in this case. At least one court has recognized that a district court may rightly "deny intervention to avoid risk of [a] hard-won settlement package becoming undone." *Moten v. Bricklayers, Masons and Plasterers, Intern. Union of America*, 543 F.2d 224, 228 (D.C. Cir. 1976).  The County's taxpayers, who are the real losers in this matter, may question the decision of the Board of County Commissioners to enter into such a settlement agreement.